WILLIAM MASSARSKY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Massarsky v. Commissioner
Docket No. 9613-77.
United States Tax Court
T.C. Memo 1979-86; 1979 Tax Ct. Memo LEXIS 437; 38 T.C.M. (CCH) 349; T.C.M. (RIA) 79086; March 15, 1979, Filed William Massarsky, pro se. Steven I. Klein, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Charles *438 R. Johnston, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trail Judge's opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE JOHNSTON, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1975 in the amount of $82.00. The issue for decision is whether petitioner is entitled to a moving expense deduction under section 217 for expenses incurred in moving from Wilkes-Barre, Pennsylvania to Baltimore, Maryland in 1975. FINDINGS OF FACT Some of the facts have been stipulated and have been found accordingly. Petitioner, William Massarsky, at the time of filing his petition, resided in Clark, New Jersey. Petitioner and his wife, Gertrude Massarsky, timely filed a joint Federal income tax return for the taxable year 1975 with the Internal Revenue Service. *439 Petitioner is a process engineer with a degree in Mechanical Engineering and a master's degree in industrial management. In September 1963, he began working for the New Departure Hyatt Division of General Motors Corporation (NDH-GMC) at Clark, New Jersey. He was thus employed for about 7-1/2 years until he was laid off on February 28, 1971. Petitioner appealed his lay off through the corporate avenues of appeal contending he was wrongfully laid off. On or about August 19, 1971, he was notified by letter that a careful review of his contentions and the circumstances surrounding his lay off led to the conclusion that the decision in his case was consistent with company policy. That letter also stated that his lay off was not regarded by the Company as a reflection on his performance as a process engineer at the Clark plant. It concluded with the hope that improvement in conditions would ultimately result in petitioner again becoming an active employee. Petitioner found employment with Atlas Chain and Precision Products (Atlas Chain) in Wilkes-Barre, Pennsylvania, in October 1971. Atlas Chain was a subsidiary of Bucyrus Erie Corporation which became dissatisfied with the operations *440 of Atlas Chain and in a resulting reorganization petitioner lost his job. Petitioner was unable to obtain other employment so he opened a quick printing shop. He struggled along with this enterprise until he suffered a cardiac arrest. This was followed by open heart surgery in December 1974. After convalescence from that surgery petitioner again sought employment or re-employment at NDH-GMC. Among other things, he worte to the United States Department of Labor seeking its help in being restored to a position with General Motors. The basis of his complaint to the Labor Department was that his lay off resulted because of age discrimination by the employer. Under the rules applicable to laid off employees, petitioner was in laid off status at General Motors for the period ending February 28, 1976. He had obtained valuable benefits through his employment at NDH-GMC which would be restored if he were re-employed in that period. While continuing his efforts in that direction, he found employment with Crown Cork & Seal Co., Inc. (Crown) in Baltimore, Maryland, beginning August 25, 1975. Petitioner found quarters in Baltimore. However, his wife remained in their home in Wilkes-Barre *441 until December 1975, at which time their household furnishings and furniture were shipped to their new residence in Baltimore. Petitioner remained in the employ of Crown until February 26, 1976, at which time he resumed working for NDH-GMC in Clark, New Jersey. Petitioner's recall to NDH-GMC resulted from the parties partial settlement of a suit, USDC Civ. Act. #75-1489, instituted by him on August 29, 1975, against NDH-GMC for wrongful lay off. The letter of recall stated: [We] hereby offer you reemployment * * * at Clark, N.J. * * * in the position of Engineer, Process and/or Production * * *. If you do not accept this offer * * * you will be considered a quit for recall purposes and eligibility for length of service if later re-employed. * * * You must be on the payroll and actually working on March 1, 1976, in order to prevent a break in your length of service and consequent loss of benefits in accordance with the provisions of the * * * Retirement Program for Salaried Employees. * * * Petitioner's Civil Action #75-1489 is still pending in the District Court. The remaining issue appears to be whether petitioner is entitled to pay for the period February 28, 1971 to *442 February 26, 1976, at NDH-GMC. On their joint Federal income tax return for 1975, petitioner and his wife claimed an above-the-line deduction for their moving expenses incurred in the move of their household furnishings from Wilkes-Barre to Baltimore in the amount of $2,058.00. Included in this amount was $425.00 which was for expenses incident to the sale of the house in Wilkes-Barre. Respondent in his statutory notice of deficiency disallowed in full for the claimed moving expenses. However, the $425.00 expense incident to the sale of the house was allowed as a reduction in computing the amount realized from the sale of the house and the gain on the sale was adjusted by that amount. The adjustment this made to petitioners' adjusted gross income produced a corresponding reduction of $74 in the amount claimed as a medical expense deduction by petitioners. OPINION Petitioner contends that under the regulations or rules applicable to employees of NDH-GMC he remained an employee of that company throughout the period of his lay off regardless of his employment with Atlas Chain and Crown, or his printing enterprise. He relies in part on Nico v. Commissioner,67 T.C. 647 (1977), *443 for the proposition that the 39 weeks test can be waived if the move was temporary. We do not regard that case as support for his position here. Under his contention that NDH-GMC was his principal employer at all relevant times, he relies upon the provision of section 217(d)(1)(B) and section 1.217-2(d)(1)(ii) Income Tax Regs., as buttressed by H. Rep. 91-413 (Part 1) 91st Cong. 1st Sess., Aug. 2, 1969, p. 74, [2] and S. Rep. No. 91-552, 91st Cong., Nov. 21, 1969, p. 109. Section 217(d)(1)(B), provides that the 39 weeks requirement of section 217(c)(2) will not apply by reason of the transfer of the taxpayer for the benefit of an employer after obtaining full time employment in which the requirement could have been satisfied. While the committee reports and the statute contain a certain amount of ambiguity as applied to the facts here together with the assumption or contention of petitioner that *444 NDH-GMC was his principal employer during his lay off, we think that the example of the regulations clarifies the circumstances intended to be covered by the statute. Section 1.217-2(d)(1)(ii) of the Income Tax Regs. provides, in part, as follows: Thus, for example, if the taxpayer at the time of transfer was not advised by his employer that he planned to transfer him within 6 months to another principal place of work, the taxpayer could, in the absence of other factors, reasonably have been expected to satisfy the minimum employment period condition at the time of the first transfer. Therefore, petitioner here could only have obtained the benefit of section 217(d)(1)(B) if NDH-GMC had employed him in Baltimore instead of Crown. In any event, we do not agree with petitioner's contention that during the period of his lay off NDH-GMC was his principal employer. His relationship with the company at that time was not that of employer and employee. At best he possessed a preferential right to be rehired for a five year period. His employment with NDH-GMC was severed at the time of lay off. In reaching this conclusion, we do not (and indeed the issue is not before us) pass upon *445 the question of whether the lay off was proper. Accordingly, we sustain the respondent's determination. Decision will be entered for the respondent.
Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. At p. 77 "the 39-week test is to be waived if the taxpayer is unable to satisfy it as a result of * * * transfer for the benefit of, an employer after obtaining full-time employment in which the taxpayer could reasonably have been expected to satisfy the 39-week requirement."↩